IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ERICK TIMOTHY GOODALL,
        Plaintiff,

v.                                  Civil Action No. 3:21cv333

CITY OF RICHMOND,
        Defendant.

## <u>MEMORANDUM OPINION</u>

According to the plaintiff, this case is about mistaken identity. In July of 1999, Richmond City police officers "falsely arrested" Erick Goodall and charged him with "possession of a firearm by a drug user, grand larceny, possession of marijuana, and possession of cocaine." (ECF No. 26, at 8.)[1] The state court nolle prossed the charges, and Goodall went on about his life. (*Id.* at 13.) Approximately two weeks after Goodall's first arrest, however, a Richmond City police officer stopped Goodall as he was "riding on Grace Street," told him that there was a "federal indictment" for his arrest, and falsely arrested him again. (*Id.* at 9, 15.)

Goodall claims that because the City of Richmond ("the City") failed to properly train its officers, those officers racially profiled him, charged him with crimes he did not commit, and assigned him the state identification number of another person. Further, he says that because of the officers' mistakes, he served thirty months in federal prison away from his family, he lost his rights to vote and to bear arms, and, most recently, he lost his job following a background check. (*Id.* at 5.) Goodall sues the City for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983, and he asks the Court to expunge his federal felony convictions and award him monetary relief. (ECF No. 26, at 19.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

The City moves to dismiss Goodall's claims.[2] (ECF No. 27.) It asserts that Virginia's two-year statute of limitations bars Goodall's claims and that he fails to plead a cognizable claim for municipal liability.[3] Because the Court agrees that the statute of limitations bars some of Goodall's claims and that his second amended complaint fails to state a claim upon which the Court could grant relief, the Court will grant the City's motion.

## II. FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT[4]

Goodall's problems began in the summer of 1999. On or around July 7, two Richmond

---

[2] The City moved to dismiss Goodall's complaint on October 25, 2021. (ECF No. 27.) The following day, Goodall filed a document titled "Notice to Court and Commonwealth." (ECF No. 30.) The City filed its reply on November 1, 2021. (ECF No. 32.) Then, on November 10, 2021, Goodall filed a document titled "Motion to dismiss motion to dismiss Rebuttal to commonwealth statements." (ECF No. 33.) The Court construes the latter as an untimely response to the City's motion to dismiss. Because Goodall proceeds pro se, the Court will accept his response and consider its contents in resolving the City's motion. Inasmuch as Goodall intends the filing to present a separate motion, the Court will grant the City's motion to dismiss and deny Goodall's "motion" as moot. (*Id.*)

[3] The City also argues that because Goodall did not file his second amended complaint by October 11, 2021, it violates "the Court's Order, (ECF No. 25), and Federal Rule of Civil Procedure 15(a)(2)." (ECF No. 28, at 2, 10–11.) The Court notes that October 11, 2021, was a federal holiday and, as such, the Court was closed. Thus, the Court accepts Goodall's second amended complaint as timely.

[4] On May 24, 2021, Goodall filed an application to proceed in forma pauperis ("IFP") and a proposed complaint. In his complaint, Goodall named the City, the Richmond City Police Department 3rd Precinct, the Richmond City Jail, the Virginia State Police ("VSP"), the Federal Bureau of Prisons ("BOP"), the Federal Bureau of Investigations ("FBI"), and the United States District Court for the Eastern District of Virginia (the "District Court") as defendants. (ECF No. 1-1.) Goodall also named two Richmond City police officers, Peace and Albright, in the body of the complaint. (*Id.*) By Order dated May 25, 2021, the Court granted Goodall's application for IFP. (ECF No. 2.) The Court, however, dismissed Goodall's claims against the BOP and the District Court and directed Goodall to file an amended complaint. (*Id.*)

Three days later, on May 28, 2021, Goodall filed his amended complaint. (ECF No. 4.) In the new complaint, he named the City, the Richmond City Jail, the Richmond City Police Department 3rd Precinct, the VSP, and the FBI as defendants. (*Id.*) Goodall once again named Officers Peace and Albright in the body of the complaint. (*Id.*) On June 1, 2021, the Court dismissed Goodall's claims against Officers Albright and Peace, the Richmond City Jail, the Richmond City Police Department 3rd Precinct, the VSP, and the FBI. (ECF No. 6.) Only his

City police officers, Peace and Albright, entered the home of the "Rios family," while Goodall was visiting there. (ECF No. 26, at 8, 13.) The officers stated that they had a warrant for someone with the alias of "Black." (*Id.*) The warrant sought a 9mm pistol and heroin. (*Id.*) Although Goodall was not the man named in the warrant, the officers seized his "22 revolver" and detained him in the bathroom while they searched the home. (*Id.*) When the search concluded, Peace and Albright arrested Goodall and took him to the "down town lockup." (*Id.* at 13.) They charged Goodall with "possession of marijuana, possession of a firearm by a drug user, possession of cocaine[,] and grand larceny." (*Id.*) Goodall planned to fight the charges at a trial, but the state court nolle prossed them before he got the chance. (*Id.*)

On or around July 22, 1999,[5] Goodall encountered Officer Peace again. (*Id.* at 9.) This time, Peace stopped Goodall on the street and informed him that there was a federal indictment for his arrest. (*Id.* at 15.) When Goodall asked what the indictment was for, Peace said that the "charges in state court [were] picked up by the federal government." (*Id.*) Peace then arrested Goodall and took him back to jail. (*Id.*) Once at the "lockup," Peace assigned Goodall a state identification number. Unbeknownst to Goodall, the number already belonged to someone else. (*See* ECF No. 26, at 4, 11, 16.) Following his second arrest, Goodall pleaded to federal charges of possession of a firearm by an unlawful drug user and possession with intent to distribute cocaine

---

claims against the City survived. (*Id.*) On August 27, 2021, the City filed its first motion to dismiss. (ECF No. 19.) Goodall then moved to amend his complaint again. (ECF No. 24.) Considering Goodall's pro se status, the Court granted his motion and denied the City's first motion to dismiss as moot. (ECF No. 25.)

On October 12, 2021, Goodall filed his second amended complaint. (ECF No. 26.) In that complaint, he named a long list of potential defendants. (*See id.*) By Order on October 27, 2021, the Court dismissed Goodall's claims against everyone but the City. (ECF No. 31.)

[5] Goodall alternatively cites both July 22 and July 27 as the date of his second arrest. (*See id.* at 4, 9, 15.)

base.[6]  (ECF No. 26, at 4, 11, 16; *see also* Civil Action No. 3:99cr248, ECF No. 16.)

But Goodall's tale does not end there.

The events of 1999 came back to haunt him in 2018 when the Virginia Department of Behavioral Health and Developmental Services ("VDBHS") fired him.  (ECF No. 26, at 28.) VDBHS informed Goodall that there were "issues relating to a criminal background check that revealed barrier crimes."[7]  (ECF No. 26, at 28.)  Goodall challenged the background check, and although he did not receive a response from "the FBI or state police," he subsequently became eligible for rehire.  (*Id.*)  By 2021, Goodall was working for "Good Neighbor Residential Services" ("GNRS").  (*Id.*)  When another background check revealed barrier crimes, however, GNRS terminated his employment. Goodall challenged the background check, and this time he received a "response from the Virginia Department of State Police . . . stating that [he] was issued . . . [a] state identification number of an inmate that was already serving time."  (*Id.*)  This error, says Goodall, caused his wrongful conviction in 2000 and his unjust termination from GNRS in 2021. (*Id.* at 4, 28.)

Goodall identifies three separate events that violated his constitutional rights.[8]  First, Richmond City police officers falsely arrested him on July 7, 1999.  Second, Officer Peace falsely arrested him on July 22, 1999.   Third, Officer Peace assigned Goodall a duplicate state

---

[6] On June 12, 2000, the Honorable James R. Spencer sentenced Goodall to 30 months' imprisonment and three years' supervised release. (Civil Action No. 3:99cr248, ECF No. 23.)

[7] In Virginia, certain felony criminal convictions may legally disqualify the convicted person from certain types of employment. *See, e.g.,* Va. Code Ann. § 19.2-392.02 (West 2021); *id.* § 63.2-1719 (West 2017).

[8] Goodall's complaint lists four "claims." (*See id.* at 11, 17, 24, 28.)  Because the Court previously dismissed Goodall's claims against the FBI and "2 Unknown U.S. Marshals," by Order dated October 27, 2021, (ECF No. 31), the Court will not address Goodall's claims related to their conduct. (*See* ECF No. 26, at 24.)

4

identification number and failed to fingerprint him or otherwise correct his misidentification. Goodall assigns a litany of statutory and constitutional injuries to each event.

## III. LEGAL STANDARD

### A. Pro Se Litigants

A complaint "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). When plaintiffs appear pro se, as Goodall does, courts do not expect them to frame legal issues with the same clarity and precision as attorneys. Rather, courts construe pro se complaints generously. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). But such generosity is not without limits, and district courts need not discern the unexpressed intent of pro se plaintiffs, "conjure up questions never squarely presented," or assume the "improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.*

### B. Federal Rule of Civil Procedure 12(b)(6).

The City moves to dismiss Goodall's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In considering the motion, a court must accept all allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). The principle that a court must accept all allegations as true, however, does not extend to legal conclusions. *Ashcroft*, 556 U.S. at 678.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is facially plausible. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting *Twombly,* 550 U.S. at 555; and Fed. R. Civ. Pro. 8(a)(2)). A court may not apply a heightened pleading standard in civil cases alleging municipal liability under 42 U.S.C. § 1983. *Leatherman v. Tarrant Cnty. Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *Cook v. Howard*, 484 F. App'x 805, 810 (4th Cir. 2012).

## IV. DISCUSSION

### A. Statute of Limitations[9]

In *Wilson v. Garcia*, the United States Supreme Court concluded "that § 1983 'confer[s] a general remedy for injuries to personal rights.'" *Owens v. Okure*, 488 U.S. 235, 240 (1989) (quoting *Wilson*, 471 U.S. 261, 278 (1985)). "Because '§ 1983 claims are best characterized as personal injury actions,' . . . [federal courts should apply] a State's personal injury statute of limitations . . . to all § 1983 claims." *Id.* at 240–41 (quoting *Wilson*, 471 U.S. at 280). In Virginia, the statute of limitations for § 1983 violations is two years. *Houghton v. Commonwealth of Va.*, 947 F.2d 941, 1991 WL 227800, *1 (4th Cir. 1991) (*citing Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981)). Although "state law supplies the limitation period for [§] 1983 claims, federal law supplies the rule of decision for when a particular claim accrues." *Cosby v. Town of Farmville*, No. 3:20cv494, 2021 WL 3575841, at *5 (E.D. Va. Aug. 12, 2021) (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)). Thus, "a cause of action accrues when the plaintiff possesses

---

[9] "A court may dismiss a complaint on statute of limitations grounds 'if the time bar is apparent on the face of the complaint.'" *Ott v. Md. Dep't of Pub. Safety and Correctional Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)).

sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995).

As discussed below, the Court finds that Virginia's statute of limitations bars claims related to the Richmond City police officers' actions *during* Goodall's two 1999 arrests. But the Court finds that the statute of limitations does not bar Goodall's claim relating to Officer Peace's conduct following his second arrest, specifically that Peace violated Goodall's Fourteenth Amendment rights when he assigned Goodall a pre-existing state identification number.

### 1. *Arrest Conduct Claims*

Insofar as Goodall's second amended complaint alleges claims arising from any Richmond City police officers' conduct during either his July 7 or July 22, 1999 arrests, his claims are barred by Virginia's two-year statute of limitations. For example, Goodall asserts that Officer Peace "falsely arrested [him] . . . without [a] warrant or probable cause" on July 7, 1999. (ECF No. 26, at 8.) Further, he says that the City failed to train Peace on "how to properly service police warrants or summons." (*Id.*) Goodall argues that this arrest supports claims including: illegal search and seizure, illegal detention, racial profiling, a "color of law violation," a "*Monell* claim violation," a *Bivens* claim violation, "excessive force by [a] police officer," harassment, false claims under "Virginia statute 8.01-216.3," and a Fourteenth Amendment violation. (*Id.*) He further claims that Officer Peace violated his "Second Amendment rights," his right to "due process," and several United States Code provisions. (*See id.* at 13–14.) Setting aside the other fatal flaws that many of these claims present,[10] the Court finds that Goodall possessed sufficient facts on July 7, 1999, as

---

[10] For example, Goodall may not sue the City of Richmond and its police officers under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), because they are not federal officials. Goodall's complaint completely fails to explain how Officer Peace and the City violated his Second Amendment rights. *See Ashcroft*, 556 U.S. at 678 (explaining that although a court must accept all factual allegations as true, the principle does not extend to legal conclusions). Goodall

7

to reveal these causes of action.  Goodall's second amended complaint makes clear that he knew, at the time of his first arrest, that he was not the person named in the officers' warrant.  (*Id.* at 8, 13, 20.)  Further, he says that his gun was not stolen and that the officers falsely arrested him "without probable cause" that he committed the crimes of "possession of marijuana, possession of a firearm by a drug user, possession of cocaine[,] and grand larceny."  (ECF No. 26, at 13, 20.)

The same is true of Goodall's claims arising from his July 22, 1999 arrest.  (*See id.* at 9, 15 (asserting claims including false arrest, excessive force, false imprisonment, violation of his "due process [Fifth] [A]mendment rights [and Fourteenth] [A]mendment rights," as well as violations of 18 U.S.C. §§ 241–242, 245 and two Virginia Code provisions, and "infringement of civil rights and liberties")).  Goodall says that Officer Peace falsely arrested him and "failed to identify" him as the person named in the indictment.  (*Id.*)  And he asserts that the City "failed to supervise its police officers to [e]nsure they had adequate training in the area of serving warrant[s] and indictments to individuals."  (*Id.* at 10.)  The City contends that Goodall "knew that he had been hurt and who had inflicted his alleged injuries in 1999."  (ECF No. 32, at 3.)  The Court agrees.

Because Goodall's claims accrued in July of 1999, the statute of limitations ran in 2001, more than twenty years ago.  Accordingly, the Court will dismiss these claims with prejudice.  *See*

---

may not assert claims pursuant to 18 U.S.C. §§ 241–242, 245 because they do not convey private rights of action. *See, e.g., Powers v. Karen*, 768 F. Supp. 46, 51 (E.D.N.Y. 1991) ("[B]ecause sections 241 and 242 do provide for a private right of action, plaintiff's reliance on them is misplaced."); *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985) (finding no private right of action under § 245). Finally, "[a] person may bring a civil action for a violation of § 8.01-216.3 for the person and for the Commonwealth." Va. Code Ann. § 8.01-216.5(A) (West 2007). But § 8.01-216.3 prohibits making false or fraudulent claims to the Commonwealth for, among other things, "payment or approval." *See* §§ 8.01-216.3(A)(1)–(2). Even if Goodall could bring a state law claim against the City pursuant to §1983, Goodall does not allege such conduct here.

*Stone v. HVM, LLC*, No. 3:12cv403, 2012 WL 13034228, *2 (E.D. Va. June 29, 2012) (citing *Lambert v. Javed*, 273 Va. 307, 311, 641 S.E.2d 109, 111 (2007) ("[W]hen a plaintiff's claim against a defendant has been resolved adversely to the plaintiff, whether on the merits or because of another bar to recovery such as . . . the statute of limitations, the plaintiff is not allowed to subject the defendant to repetitive litigation on the same, previously resolved claim.")). Because the Court dismisses his claims with prejudice, Goodall may *not* file a future action asserting the same claims. *See With Prejudice, Black's Law Dictionary* (11th ed. 2019).

## 2. *Post-Arrest Conduct Claims*

Goodall's claim arising from Officer Peace's conduct following his second arrest presents a more complicated question. Goodall asserts that during the booking process Officer Peace assigned him a state identification number that already belonged to someone else. As best the Court can tell, Goodall asserts that Officer Peace's action in 1999 violated his right to due process under the Fourteenth Amendment and made crimes that Goodall *was never convicted for* appear on his 2018 and 2021 background checks. (*See* ECF No. 26, at 11; ECF No. 33, at 3.)

According to Goodall, he first learned of a problem with his record in 2018 after a background check revealed "barrier crimes" that disqualified him from employment. (ECF No. 26, at 28.) Goodall says that no one told him what the barrier crimes were, only that they existed. (*See* ECF No. 33, at 1.) Nevertheless, Goodall challenged the background check "through . . . the state police of Virginia and the Federal Bureau of Investigations." (*Id.*) He did not receive a response, but he did get his job back. Then in 2021, Goodall lost his job again after a second background check revealed "barrier crimes." (*Id.*) This time, the state police responded to Goodall's challenge and told him that he "was issued another state identification number of an

9

inmate that was already serving time."[11] (ECF No. 26, at 28.)  Virginia subsequently expunged the charges associated with that number from his record.  Goodall's second amended complaint does not include a specific date for either termination.  In his responsive pleadings, however, Goodall states that GNRS fired from his job as "a Direct Support Professional" on March 28, 2021. (*See* ECF No. 33, at 1.)

The City asserts that "no later than . . . 2018, . . . [Goodall] became aware that his identify was associated with crimes that were not his own" and "possessed sufficient facts about the harm done to him that reasonable inquiry would have revealed his cause of action." (ECF No. 32, at 3.) Goodall argues that his claim accrued on April 6, 2021 because that was the day the "Virginia . . . State Police background check unit" informed him that he had two state identification numbers. (ECF No. 30, at 2.)

The Court finds that Goodall's remaining cause of action against the City accrued on March 28, 2021.  "[A] cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry *will reveal* his cause of action." *Nasim*, 64 F.3d at 955 (emphasis added).  Goodall says that he challenged the 2018 background check, that he did not

---

[11] Goodall's responsive pleading includes a letter from Chadwick D. Rogers, Lieutenant for Matthew T. Patterson, Captain of the Criminal Justice Information Services Division. (ECF No. 30-1.)  In the letter, Mr. Rogers stated:

> [T]he fingerprints of Mr. Erick Timothy Goodall have been searched through the Automated Fingerprint Identification System (AFIS) of the Virginia State Police and were found not to match those found under state identification number VA954009.  Therefore, all of Mr. Erick Timothy Goodall's personal identifiers have been removed from this record.  However, Mr. Erick Timothy Goodall does have a criminal record on file with this agency under state identification number VA1218788L.

(ECF No. 30-1, at 2.)

receive a response from the state or the FBI, and that he subsequently became eligible for rehire. (ECF No. 26, at 28.)   From these facts the Court infers that Goodall performed a "reasonable inquiry" in 2018, but that his inquiry did not reveal the facts supporting his claim.   Further, Goodall asserts that when GNRS fired him in March of 2021, he reasonably inquired into his record again. Because Goodall's cause of action accrued in March of 2021, his remaining claim falls well within Virginia's two-year statute of limitations.

### B. Failure to State a Claim

Although the statute of limitations does not bar Goodall's final claim, the Court will nevertheless dismiss his complaint because his remaining claim fails to state a claim for municipal liability against the City.

### 1. Section 1983

Goodall sues the City of Richmond, VA, pursuant to 42 U.S.C. § 1983, for various violations of his constitutional rights.   Under § 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Goodall seeks redress under § 1983, thus, he must demonstrate that (1) a person, (2) acting under color of state law, (3) deprived him of a federal statutory or constitutional right. *See Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).   Goodall alleges that the City violated his Fourteenth Amendment right to due process when Officer Peace assigned him a preexisting state identification number.   Even if the Court accepts that Goodall's second amended complaint pleads a deprivation of a legitimate liberty interest, however, Goodall fails to allege facts upon which this Court grant relief against the City.

11

## *2. Municipal Liability*

"[M]unicipalities and other local government units ... [are] among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs. Of the City of N.Y.*, 436 U.S. 658, 690 (1978). But "municipalities are not liable pursuant to *respondeat superior* principles for all constitutional violations of their employees simply because of the employment relationship." *Edwards*, 178 F.3d at 244 (emphasis in original) (citing *Monell*, 436 U.S. at 692–94). This means that Goodall may not sue the City for the ordinary mistakes and misdeeds of Richmond City police officers merely because the City employs them. Rather, because Goodall proceeds against the City under a theory of municipal liability, he must show that the City caused the deprivation through an official policy or custom. *Id.* A policy or custom for which a municipality may be liable can exist in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle*, 326 F.3d at 471 (internal citations omitted). According to Goodall, the City is liable because it failed to properly train Officer Peace to use the Central Criminal Exchange System.[12] (ECF No. 26, at 8–10, 28, 45.)

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police

---

[12] Goodall does not allege that Officer Peace acted pursuant to an express policy. In fact, he argues that Officer Peace acted contrary to an established policy. (ECF No. 26, at 11 ("It is the [C]ity policy to identif[y] and arrest person[s] sou[ght] out in crimes, [and] the [C]ity [violated] this policy when it failed to train its police officer on the use [of] Virginia state code statute 19.-390.").) Goodall also does not claim that Officer Peace acted pursuant to a decision of a person with final policymaking authority. Finally, Goodall does not allege a "widespread and persistent" practice of assigning preexisting identification numbers to detainees.

12

come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). This "deliberate indifference standard ensures that a municipality either knew or should have known about the deficiency" and thus had an opportunity to remedy the problem. *Estate of Jones v. City of Martinsburg*, 961 F.3d 661, 672 (4th Cir. 2020). Further, "municipal liability will attach only for those policies . . . having a '*specific* deficiency or deficiencies . . . such as to make the *specific* violation almost bound to happen.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987) (emphasis in original)).

Goodall says that Officer Peace's isolated act in 1999 started a chain reaction that ended when GNRS fired him in 2021. These facts paint a frustrating picture, but they do not support a claim that the City of Richmond was deliberately indifferent to Goodall or anyone else. Goodall does not identify a specific deficiency in the City's training program, let alone such a glaring flaw that the City should have known injuries like Goodall's were all but certain to occur. Rather, Goodall concedes that Officer Peace's actions "could [have been] wrong doing by [a] bad actor[] or just a simple computer error." (ECF No. 30, at 3–4.) Because Goodall's well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct" by the City of Richmond, he fails to show that he is entitled to relief, and the Court must dismiss his complaint. *See Ashcroft*, 556 U.S. at 679.

## V. CONCLUSION

For the reasons outlined above, the Court finds that Virginia's two-year statute of limitations bars all but one of Goodall's claims against the City and that Goodall's second amended complaint fails to plead a claim for municipal liability against the City. Accordingly, the Court will grant the City's motion to dismiss. (ECF No. 27.)

The Court will issue an appropriate Order.

13

14

Let the Clerk send a copy of this Opinion to all counsel of record and the pro se plaintiff.

Date: __7__ February 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge